1  ARNOLD & PORTER LLP
   MAURICE A. LEITER (State Bar No. 123732)
2  maury.leiter@aporter.com
   777 South Figueroa Street, 44th Floor
3  Los Angeles, California 90017-5844
   Telephone: +1 213.243.4000
4  Facsimile: +1 213.243.4199

5  ARNOLD & PORTER LLP
   MICHAEL J. BAKER (State Bar No. 56492)
6  michael.baker@aporter.com
   SHARON D. MAYO (State Bar No. 150469)
7  sharon.mayo@aporter.com
   JEREMY M. MCLAUGHLIN (State Bar No. 258644)
8  jeremy.mclaughlin@aporter.com
   Three Embarcadero Center, 10th Floor
9  San Francisco, California 94111-4024
   Telephone: +1 415.471.3100
10 Facsimile: +1 415.471.3400

11 *Attorneys for Defendant Bristol-Myers Squibb Company*

12

13

14                    **UNITED STATES DISTRICT COURT**
                      **NORTHERN DISTRICT OF CALIFORNIA**
15

16

17
   GARY BAEZ, *et al.*,                    )   Case No. _____
18                                         )
                      Plaintiffs,          )
19                                         )
         v.                                )
20                                         )   **DEFENDANT BRISTOL-MYERS**
                                           )   **SQUIBB COMPANY'S NOTICE OF**
21 BRISTOL-MYERS SQUIBB COMPANY,           )   **REMOVAL OF ACTION PURSUANT TO**
   MCKESSON CORPORATION, and DOES 1        )   **28 U.S.C. §§ 1332, 1441, and 1446**
22 to 100,                                 )
                                           )   **DEMAND FOR JURY TRIAL**
23                    Defendants.          )
                                           )
24                                         )
                                           )
25 _____ )

26

27

28

---
                              NOTICE OF REMOVAL

## I.    <u>INTRODUCTION AND FACTUAL BACKGROUND</u>

      1.     Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and any other applicable laws, Defendant Bristol-Myers Squibb Company ("BMS") hereby gives notice of removal of the above action, entitled *Gary Baez et al. v. Bristol-Myers Squibb Company et al.*, bearing Civil Action No. CGC-14-537703, from the Superior Court of the State of California, County of San Francisco, to the United States District Court for the Northern District of California. The *Baez* action is substantively identical to forty-nine other cases involving the prescription medication Plavix® previously pending in this District that were transferred by the Judicial Panel on Multidistrict Litigation ("JPML") to a Plavix® Multidistrict Litigation ("MDL") in the District of New Jersey.[1] To date, stays of further proceedings pending transfer to the MDL have been entered in thirty-five

---

[1]     *Kinney v. Bristol-Myers Squibb Co.*, No. 12-4477 EMC (N.D. Cal.); *Burman v. Bristol-Myers Squibb Co.*, No. 12-4478 EMC (N.D. Cal.); *Raynor v. Bristol-Myers Squibb Co.*, No. 12-4615 EMC (N.D. Cal.); *Robinson v. Bristol-Myers Squibb Co.*, No. 12-4616 EMC (N.D. Cal.); *Meeks v. Bristol-Myers Squibb Co.*, No. 12-4617 EMC (N.D. Cal.); *Olmstead v. Bristol-Myers Squibb Co.*, No. 12-4619 EMC (N.D. Cal.); *Dillard v. Bristol-Myers Squibb Co.*, No. 12-4633 EMC (N.D. Cal.); *Walden Jr. v. Bristol-Myers Squibb Co.*, No. 12-4641 EMC (N.D. Cal.); *Kaluza v. Bristol-Myers Squibb Co.*, No. 12-4642 EMC (N.D. Cal.); *Corkerin v. Bristol-Myers Squibb Co.*, No. 12-4803 EMC (N.D. Cal.); *Aiken v. Bristol-Myers Squibb Co.*, No. 12-5208 RS (N.D. Cal.); *Vanny v. Bristol-Myers Squibb Co.*, No. 12-05752 SI (N.D. Cal.); *Belinda v. Bristol-Myers Squibb Co.*, No. 12-5941 YGR (N.D. Cal.); *Arnold v. Bristol-Myers Squibb Co.*, No. 12-6426 TEH (N.D. Cal.); *Norrise v. Bristol-Myers Squibb Co.*, No. 12-6456 SI (N.D. Cal.); *Arenberg v. Bristol-Myers Squibb Co.*, No. 12-6207 SBA (N.D. Cal.); *Lowery v. Bristol-Myers Squibb Co.*, No. 13-2556 CW (N.D. Cal.); *Farmer v. Bristol-Myers Squibb Co.*, No. 13-2650 SC (N.D. Cal.); *Davis v. Bristol-Myers Squibb Co.*, No. 13-1462 EMC (N.D. Cal.); *Green v. Bristol-Myers Squibb Co.*, No. 13-1489 SC (N.D. Cal.); *Howell v. Bristol-Myers Squibb Co.*, No. 13-1516 MMC (N.D. Cal.); *Ritchey v. Bristol-Myers Squibb Co.*, No. 13-1461 JSW (N.D. Cal.); *Guinn v. Bristol-Myers Squibb Co.*, No. 13-1487 WHA (N.D. Cal.); *Gibson v. Bristol-Myers Squibb Co.*, No. 13-1416 SBA (N.D. Cal.); *Marrero v. Bristol-Myers Squibb Co.*, No. 13-1488 JST (N.D. Cal.); *Addison v. Bristol-Myers Squibb Co.*, No. 13-2166 WHA (N.D. Cal.); *McGuire v. Bristol-Myers Squibb Co.*, No. 13-3580 (N.D. Cal.); *Khan v. Bristol-Myers Squibb Co.*, No. 13-3573 (N.D. Cal.); *Boatright v. Bristol-Myers Squibb Co.*, No. 13-3682 (N.D. Cal.); *Wilkerson v. Bristol-Myers Squibb Co.*, No. 13-3686 (N.D. Cal.); *Banks v. Bristol-Myers Squibb Co.*, No. 13-3779 (N.D. Cal.); *Ester v. Bristol-Myers Squibb Co.*, No. 13-3778 (N.D. Cal.); *Roberson v. Bristol-Myers Squibb Co.*, No. 13-3811 (N.D. Cal.); *Harris v. Bristol-Myers Squibb Co.*, No. 13-3812 (N.D. Cal.); *Kessel v. Bristol-Myers Squibb Co.*, No. 13-3814 (N.D. Cal.); *Abney v. Bristol-Myers Squibb Co.*, No. 13-2557 YGR (N.D. Cal.); *Jones v. Bristol-Myers Squibb Co.*, No. 13-2415 PJH (N.D. Cal.); *Douglas v. Bristol-Myers Squibb Co.*, No. 13-2331 SBA (N.D. Cal.); *Docks v. Bristol-Myers Squibb Co.*, No. 13-5109 TEH (N.D. Cal.); *Lopresti v. Bristol-Myers Squibb Co.*, No. 13-4079 JSW (N.D. Cal.); *Yuan v. Bristol-Myers Squibb Co.*, No. 13-4010 WHA (N.D. Cal.); *Bankert v. Bristol-Myers Squibb Co.*, No. 13-4003 EMC (N.D. Cal.); *Mathis v. Bristol-Myers Squibb Co.*, No. 13-5468 JST (N.D. Cal.); *Bustamante v. Bristol-Myers Squibb Co.*, No. 13-5586 RS (N.D. Cal.); *Baird v. Bristol-Myers Squibb Co.*, No. 14-0009 WHA (N.D. Cal.); *Justice v. Bristol-Myers Squibb Co.*, No. 14-0259 CW (N.D. Cal.); *Agulay v. Bristol-Myers Squibb Co.*, No. 14-0481 EMC (N.D. Cal.); *Diercks v. Bristol-Myers Squibb Co.*, No. 14-0572 JST (N.D. Cal.); *Bozzell v. Bristol-Myers Squibb Co.*, No. 14-0658 SI (N.D. Cal.).

of these cases.  BMS intends to file a tag-along notice for this case with the JPML and to file a motion to stay this case pending transfer to the MDL.

2.      On February 27, 2014, Plaintiffs filed this Complaint against Defendants BMS, McKesson Corporation ("McKesson"), and Does 1-100 in the Superior Court of the State of California, County of San Francisco.  Defendant BMS has received a copy of, but has not yet been served with, the Complaint.  Pursuant to 28 U.S.C. § 1446(a), a true and legible copy of the Complaint is attached as Exhibit A.

3.      As further set forth below, jurisdiction over this case is proper based on diversity. Complete diversity exists between all properly joined and served Plaintiffs and Defendants.  In addition, Defendant McKesson Corporation's citizenship should be disregarded because it has been fraudulently joined.  Similarly, the citizenship of the unnamed Doe Defendants is ignored for removal purposes.

## II.   FEDERAL JURISDICTION

### A.   DIVERSITY JURISDICTION

4.      Defendant BMS removes this action on the basis of complete diversity of citizenship pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  There is complete diversity between all properly joined and served Plaintiffs and Defendants.

5.      Defendant BMS is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in New York.  Defendant BMS is, therefore, a citizen of the States of Delaware and of New York.

6.      Defendant McKesson Corporation is fraudulently joined.  Therefore, its citizenship must be ignored for purposes of determining the propriety of removal.  To the extent its citizenship is considered, on information and belief, Defendant McKesson Corporation is a citizen of the States of Delaware and California.  Ex. A, ¶ 43.

7.      The citizenship of parties sued under fictitious names (Does 1 - 100) is disregarded for purposes of removing on the basis of diversity jurisdiction.  28 U.S.C. § 1441(a).  28 U.S.C. § 1441(a); *Wood v. Davis*, 59 U.S. 467, 469 (1855) ("It has been repeatedly decided by this court, that . . . nominal parties . . . cannot oust the federal courts of jurisdiction . . . ."); *Roth v. Davis*, 231 F.2d

681, 683 (9th Cir. 1956) ("In determining the question whether diversity of citizenship requisite to jurisdiction exists . . . the presence of a nominal party with no real interest in the controversy will be disregarded.") (quotations and citation omitted); *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1132 (9th Cir. 2002) ("Nor may the presence of a sham or nominal party defeat removal on diversity grounds.") (citations omitted).

8.      Plaintiffs are 27 individuals from the States of Alabama, Arizona, California, Georgia, Idaho, Illinois, Indiana, Mississippi, New Jersey, North Carolina, Ohio, Pennsylvania, Texas, and Virginia.  *See infra* Section III.

### i.      Removal Is Proper Because No Forum Defendant Has Been Served

9.      Pursuant to 28 U.S.C. § 1441(b), this action is removable because no party in interest properly joined and served as a defendant is a citizen of California, the state in which this action was brought (a "forum defendant").  *See* 28 U.S.C. § 1441(b) (providing that non-federal question cases "shall be removable only if none of the parties in interest properly joined ***and served*** as defendants is a citizen of the State in which the action is brought") (emphasis added).

10.     Defendant McKesson is alleged in the Complaint to be a citizen of California.  As of the time of filing of this Notice, however, McKesson had not been served with process.  Removal is proper where there is complete diversity, and no forum defendant has yet been served.  *City of Ann Arbor Employees' Retirement Sys. v. Gecht*, No. C-06-7453 EMC, 2007 WL 760568, at *8 (N.D. Cal. Mar. 9, 2007) (denying plaintiff's motion for remand, where, as here, a non-forum defendant had removed the action when the alleged forum defendants had not been properly joined and served); *Carreon v. Alza Corp.*, No. C 09–5623 RS, 2010 WL 539392, at *1 (N.D. Cal. Feb. 9, 2010) (same); Order, *Petit v. Bristol-Myers Squibb Co.*, No. 1:11-cv-05159-VM (S.D.N.Y. Mar. 23, 2012) (attached as Exhibit B) (same in a Plavix® action); *Waldon v. Novartis Pharm. Corp.*, No. C07-01988 MJJ, 2007 WL 1747128, at *2 (N.D. Cal. June 18, 2007) (denying remand when "McKesson was not properly 'joined and served' at the time of removal as required by 28 U.S.C. Section 1441(b).") (emphasis added); *Goodwin v. Reynolds*, 2:12-CV-0033-SLB, 2012 WL 4732215, at *5-6 (N.D. Ala. Sept. 28, 2012) (denying remand and noting that "the 'majority' of courts follow the plain language of 1441(b) and allow non-forum defendants to remove where a

- 4 -

1    forum defendant remains unserved"); *id.* at *5 n.6 ("[T]he removal statutes contain no waiting

2    period regarding how quickly defendants may remove a case but instead limit removal to thirty days

3    with certain qualifications."). *See also Regal Stone Ltd. v. Longs Drug Stores Cal., LLC*, No. 11–

4    4540 SC, 2012 WL 685756, at *4 (N.D. Cal. May 4, 2012) (denying remand after the passage of the

5    Federal Courts Jurisdiction and Venue Clarification Act, finding "[t]he Court is therefore bound to

6    take Congress's preservation of Section 1441's 'properly joined and served' language as an

7    endorsement").[2]

8           11.    In the present case, because Plaintiffs have not served any forum defendant, any such

9    defendant's alleged citizenship in California is not an impediment to removal under 28 U.S.C.

10    § 1441(b).

11                 **ii.**    **Fraudulent Joinder of Defendant McKesson Corporation**

12           12.    In addition and in the alternative, Defendant McKesson Corporation is not a proper

13    party to this case, and its California citizenship should therefore be disregarded for purposes of

14    removal, because it has been fraudulently joined.  28 U.S.C. § 1441(b) (diversity jurisdiction is

15    proper "if none of the parties in interest *properly joined* and served as defendants is a citizen of the

16    State in which such action is brought") (emphasis added).

17           13.    A defendant is fraudulently joined and its presence in the lawsuit is ignored for

18    purposes of determining diversity where no viable cause of action has been stated against it.  *See*

19    *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (a defendant is fraudulently

20    joined "if the plaintiff fails to state a cause of action against the resident defendant, and the failure is

21    obvious according to the settled rules of the state") (citing *McCabe v. Gen. Foods Corp.*, 811 F.2d

22    1336, 1339 (9th Cir. 1987)); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)

23    (same).

24

25     [2]       Congress has enacted legislation reaffirming that an action may be removed on the basis of
26    diversity jurisdiction when a forum defendant is not properly joined or served at the time of
removal.  The "Federal Courts Jurisdiction and Venue Clarification Act of 2011" amended the
removal and remand procedures in 28 U.S.C. § 1441, but retained the language in section 1441(b)
27    that bars removal only if any "of the parties in interest ***properly joined and served*** as defendants is a
citizen of the State in which such action is brought."  *See* Federal Courts Jurisdiction and Venue
28    Clarification Act of 2011, Pub. L. No. 112-63 § 103, 125 Stat. 758, 760 (2011) (emphasis added).

NOTICE OF REMOVAL

14.     Defendant McKesson is fraudulently joined because:  (1) McKesson, as a mere distributor, is not liable under any cause of action alleged in the complaint, and (2) Plaintiffs have failed to allege that McKesson distributed Plavix® to *these* Plaintiffs, and have not otherwise made allegations of *any* tortious conduct on the part of McKesson.

15.     *First,* the claims against McKesson -- which are essentially all failure-to-warn and warning-based design defect claims -- are preempted under the Supreme Court's decisions in *Pliva, Inc. v. Mensing*, 131 S. Ct. 2567 (2011), and *Mutual Pharmaceutical Co. v. Bartlett*, 133 S. Ct. 2466 (2013).  *See, e.g.*, Ex. A, ¶ 73 (in design defect cause of action, alleging that Plavix® was "defective due to inadequate warning or instruction"); *id.* ¶ 92 (in negligence cause of action, alleging that Defendants were "negligent in the . . . warning . . . of Plavix"); *id.* ¶ 100 (in breach of implied warranty cause of action, alleging that "Plavix was unaccompanied by warnings of its dangerous propensities"); *id.* ¶ 105 (in breach of express warranty cause of action, alleging that "Plavix was unaccompanied by warnings of its dangerous propensities"); *id.* ¶ 113 (in deceit by concealment cause of action, alleging that Defendants had "unique knowledge and expertise regarding the defective nature of Plavix" but failed to disclose that Plavix® was not safe and effective); *id.* ¶¶ 125-27 (in negligent misrepresentation claim, alleging that Defendants disseminated false information in "the content of the labels (i.e., the product labeling) to physicians through publication of the drug's monograph in the PDR, and otherwise [by communicating] information regarding the drug through advertising, distribution of promotional materials, sales presentations by company sales representatives, group sales representatives, and sponsored publications and seminar speakers"); *id.* ¶ 133 (in fraud by concealment cause of action, alleging that Defendants "had the duty and obligation to disclose . . . the true facts concerning Plavix, that is, that Plavix was dangerous and defective" but concealed this information); *id.* ¶ 151 (in Violation of Cal. Bus. & Prof. Code § 17200 cause of action, alleging that Defendants engaged in unlawful practice, including failing to "updat[e] labels and timely and properly implement[ ] label changes"); *id.* ¶ 159(c) (same under Violation of Cal. Bus. & Prof. Code § 17500 claim); *id.* ¶ 170(h) (same under Violation of Cal. Civ. Code § 1750 claim); *id.* ¶ 173 (in wrongful death cause of action, alleging that decedents died as a result of taking Plavix®, a drug "labeled" by Defendants).

NOTICE OF REMOVAL

16.     The Supreme Court's decision in *Mensing* clarified the preemption doctrine as it relates to manufacturers of generic drugs.  In *Mensing*, two plaintiffs brought product liability actions against manufacturers of generic prescription drugs.  *Id.* at 2573.  The generic manufacturers argued that, under federal drug regulations, they are "prevented [ ] from independently changing their generic drugs' safety labels."  *Id.* at 2577.  Consequently, they argued, holding them liable under state law for failure to "adequately and safely label their products," would directly conflict with labeling requirements under federal law.  *Id.*  The Supreme Court agreed:  Because generic manufacturers are unable to comply with both state and federal law, state failure-to-warn claims against generic drug manufacturers must be preempted.  *Id.* at 2577-78, 2581 ("If the Manufacturers had independently changed their labels to satisfy their state-law duty [to attach a safer label], they would have violated federal law.").

17.     Under *Bartlett*, the Court further held that "state-law design-defect claims that turn on the adequacy of a drug's warnings are preempted under federal law under [*Mensing*]."  133 S. Ct. at 2470.  The Court explained that generic manufacturers cannot redesign a drug because federal law "requires a generic drug to have the same active ingredients, route of administration, dosage form, strength, and labeling as the brand-name drug on which it is based."  *Id.* at 2475 (citations omitted).  Moreover, "[a]s [*Mensing*] made clear, federal law prohibits generic drug manufacturers from changing their labels."  *Id.* at 2476.  State-law warning-based design claims are therefore preempted "[b]ecause it is impossible for [generic] manufacturers to comply with both state and federal law."  *Id.* at 2477.

18.     The same preemption analysis articulated by the Supreme Court in *Mensing* and *Bartlett* works to bar claims against pharmaceutical distributors that stand even further removed than generic manufacturers from the ability to change drug labeling and other warnings.  The crux of Plaintiffs' claims against McKesson is that, independent of BMS, McKesson should have warned about the risks not included in the Plavix® product labeling.  Had it done so, McKesson would have been subject to potential civil and/or criminal penalties for "misbranding."  21 U.S.C. §§ 333, 334.

19.     FDA regulations on misbranding prohibit any person, including a pharmaceutical distributor, from issuing any warning that is not consistent with the drug's FDA-approved labeling.

- 7 -

21 C.F.R. § 201.100(d)(1). Under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* (the "FDCA"), when the FDA approves a drug for marketing, it also approves the drug's labeling, including information about the drug's potential risks and benefits. 21 U.S.C. § 355(d). All other materials disseminated about a drug's risks and benefits, including promotional materials and "Dear Doctor" letters, must be "consistent with and not contrary to . . . the approved or permitted labeling."[3] 21 C.F.R. § 201.100(d)(1); Br. for United States as Amicus Curiae Supp. Resp'ts at 4-5, *Mensing*, 131 S. Ct. 2567 (2011) (Ex. C); 73 Fed. Reg. 2848, 2850 n.3 (2008) ("Federal law governs not only what information must appear in labeling, but also what information may not appear."). If a distributor issued warnings about a drug that were not approved by the FDA and that were inconsistent with the approved labeling, it would subject itself to possible civil and/or criminal penalties for misbranding.[4] 21 U.S.C. §§ 333, 334. In other words, if McKesson had gone beyond the approved labeling for Plavix®, it may have been liable for federal penalties for misbranding.

20. Nor could McKesson change the approved product labeling. Only the party who submits the New Drug Application (the "NDA") to obtain FDA approval to market a drug can seek to change the drug's labeling after initial approval.[5] 21 C.F.R. § 314.71(a) ("*Only the applicant*

---

[3]   21 U.S.C. § 321(m) (labeling includes "all labels and other written, printed, or graphic matter"); 21 C.F.R. § 1.3 (same). Thus, the term "labeling" includes more than the printed package insert.

[4]   The FDCA and regulations provide that a drug is misbranded if its labeling is "false and misleading in any particular." 21 U.S.C. § 352(a); *id.* § 321(n); *id.* § 331(a), (b), (k); 21 C.F.R. § 201.6(a). A statement about a drug's risks would be considered "false and misleading" if it has not been found by the FDA to be properly substantiated. 40 Fed. Reg. 28,584 (1975) ("In short, a drug is misbranded if its labeling makes claims that have not been properly substantiated."). By definition, an unapproved warning by a distributor that is inconsistent with the approved drug labeling would not have been found to be substantiated by the FDA and, thus, would likely constitute misbranding.

[5]   Major labeling changes require the FDA's prior approval through submission of a Prior Approval Supplement ("PAS"). 21 C.F.R. § 314.70(b). Certain other changes may be made without advanced FDA approval through the Changes Being Effected ("CBE") regulations. 21 C.F.R. § 314.70(c). The federal regulations make clear that only the NDA holder can apply for these supplemental changes. 21 C.F.R. § 314.70(a) (requiring "*the applicant*" and "*holder of an approved application*" to submit changes to the FDA); *id.* § 314.70(b)(3) ("*The applicant* must obtain approval of a supplement from FDA [for major changes under the PAS procedure].");*id.* § 314.70(c)(6) ("*[T]he holder of an approved application* may commence distribution of the drug

(Footnote Cont'd on Following Page)

- 8 -

1  may submit a supplement to an application.") (emphasis added); *id.* § 314.70(a)(4) ("The *applicant*

2  must promptly revise all promotional labeling and advertising to make it consistent with any

3  labeling change implemented . . . .") (emphasis added).  Here, McKesson is not the applicant[6] for

4  the Plavix® NDA and, therefore, has no authority to seek any changes to the drug's labeling.[7]

5        21.     For this very reason -- *i.e.*, that a distributor is not the NDA holder -- the District of

6  New Jersey found the failure-to-warn claims against a distributor of a brand-name prescription drug

7  to be preempted.  In *In re Fosamax*, plaintiffs named distributors of Fosamax -- Watson

8  Pharmaceuticals and Watson Laboratories ("Watson") -- as defendants in a product liability suit.

9  *See In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, MDL No. 2243 (JAP-LHG),

10  2012 WL 181411, at *1 (D.N.J. Jan 17, 2012).  To circumvent *Mensing*, instead of relying on

11  Watson's role as a generic manufacturer, Plaintiffs also alleged that that "Defendant Watson was

12  what is known as an the authorized distributor of branded Fosamax."  *Id.*  Nevertheless, Watson

13  argued, and the District of New Jersey agreed, that *Mensing* should apply because "[a]s a distributor

14  of Fosamax, Watson has no power to change Fosamax labeling.  That power lies with the applicant

15  _____

16  (Footnote Cont'd From Previous Page)
   product involved upon receipt by the agency of the supplement for the change [under the CBE

17  procedure].") (emphases added).  *See Mensing*, 131 S. Ct. at 2575 ("The FDA denies that the
   [generic] Manufacturers could have used the CBE process to unilaterally strengthen their warning

18  labels. . . . We defer to the FDA's interpretation of its CBE and generic labeling regulations.")
   (citations omitted); Ex. C, at 12 ("[Generic manufacturers] could not properly have invoked the

19  CBE or PAS process.").  *See also* 21 U.S.C. § 355(o)(4)(A) (FDA contacts the brand-name
   manufacturer to initiate safety changes in drug labeling).

20  [6]    FDA, Drugs@FDA Glossary of Terms,

21  http://www.fda.gov/Drugs/informationondrugs/ucm079436.htm (last visited Feb.27, 2014)
   ("Company:  The company (also called applicant or sponsor) submits an application to FDA for

22  approval to market a drug product in the United States.").

23  [7]    Moreover, McKesson is not required to exert pressure to make labeling changes on third
   parties who can implement such changes, namely the NDA holder or the FDA.  The Supreme Court

24  in *Mensing* rejected the argument that preemption turns on whether a defendant who is not the NDA
   applicant asked the FDA to initiate any labeling changes.  *Mensing*, 131 S. Ct. at 2579 ("The

25  question for 'impossibility' is whether the private party could independently do under federal law
   what state law requires of it. . . .  We can often imagine that a third party or the Federal Government

26  *might* do something that makes it lawful for a private party to accomplish under federal law what
   state law requires of it.");  *id.* at 2580 ("To consider in our pre-emption analysis the contingencies

27  inherent in these cases . . . would be inconsistent with the *non obstante* provision of the Supremacy

28  Clause.").

- 9 -

1   who filed the New Drug Application (NDA) seeking approval to market Fosamax." *Id.* at *3

2   (citations omitted).  *See also Stevens v. Cmty. Health Care Inc.*, No. ESCV200702080, 2011 WL

3   6379298, at *1 (Mass. Super. Ct. Oct. 5, 2011) ("As a distributor, however, DAVA had no ability to

4   change labeling or warnings and thus, like a generic manufacturer, DAVA cannot be subject to

5   liability in connection with a state law claim premised on a 'failure to warn.'").

6         22.     Likewise here, McKesson, who is alleged simply to be a distributor of Plavix®,

7   cannot be liable under the state law theories asserted in the Complaint.  McKesson has no ability

8   lawfully to alter the Plavix® labeling, and to subject McKesson to liability here would conflict

9   directly with federal law governing prescription drug labeling.  Such state claims are therefore

10  preempted, and Plaintiffs have not stated a viable claim against McKesson.[8]

11        23.     Defendant BMS recognizes that Judge Chen previously remanded eight other

12  Plavix® actions removed to this Court from San Francisco County Superior Court, but respectfully

13  disagrees with that decision.  *Caouette v. Bristol-Myers Squibb Co.*, No. C-12-1814 EMC, 2012 WL

14  3283858 (N.D. Cal. Aug. 10, 2012).  BMS is removing this case because it respectfully believes

15  removal is well founded on the merits for the following reasons.

16        24.     The decision in *Caouette* did not actually address the argument that failure-to-warn

17  claims against a pharmaceutical distributor are preempted, deciding instead to rely on Plaintiffs'

18  design defect claims.  *Caouette*, 2012 WL 3283858, at *3-4.[9]  As to those claims, we respectfully

19  submit that the decision did not squarely address and decide whether the *Mensing* rationale also

20  applies to preempt design defect claims against McKesson, an issue which must be decided here to

21

---

22  [8]     Although some California federal courts have previously rejected arguments that
    pharmaceutical distributors were fraudulently joined, these cases largely predate *Mensing* and/or did

23  not directly address whether *Mensing* barred failure-to-warn claims against McKesson.  The
    Supreme Court and the Ninth Circuit have not considered whether implied preemption bars product

24  liability claims against a distributor of prescription drugs in the fraudulent joinder context.

    [9]     Indeed, Judge Chen subsequently requested supplemental briefing from plaintiffs in the

25  related cases previously before him on the failure-to-warn preemption issue.  *See* Order re:
    Supplemental Briefing, *Kinney v. Bristol-Myers Squibb Co.*, No. C-12-4477 EMC (N.D. Cal. Feb.

26  19, 2013) (noting that "Plaintiffs have yet to address the question (assuming the logic of *Mensing*'s
    impossibility analysis applies here) why it is not impossible for a distributor to provide additional

27  warnings (as Plaintiffs contend is required by California law) and not contravene federal law")
    (attached as Exhibit D).

28

determine whether jurisdiction is proper. *Id.* at *5 & n.5. Instead of relying on the majority of courts that have found the *Mensing* preemption rationale equally applicable to design defect claims,[10] the Court in *Caouette* granted remand because of perceived uncertainty on this issue created in large part by *Bartlett v. Mutual Pharmaceutical Co.*, 678 F.3d 30 (1st Cir. 2012). *Caouette*, 2012 WL 3283858, at *4. As discussed above, *see supra* ¶ 17, the Supreme Court recently reversed the First Circuit's decision in *Bartlett* cited by Judge Chen and held that warning-based design defect claims, like those here, are also preempted under the *Mensing* doctrine, thus undermining the rationale on which the Court relied in remanding *Caouette*. The Supreme Court confirmed that companies that do not hold the NDA for an FDA-approved drug, including distributors of branded and generic drugs, are no more permitted to change the labeling of the drug than they are permitted to change the design. 133 S. Ct. at 2475-76.

25.     **Second**, the Complaint is completely devoid of allegations concerning McKesson as they relate to these Plaintiffs. Plaintiffs allege only that McKesson is a distributor of Plavix®, Ex. A, ¶ 1, but never allege that McKesson distributed the Plavix® that Plaintiffs used and that caused their specific injuries.

26.     In other pharmaceutical actions, courts have found drug distributors -- and McKesson in particular -- to have been fraudulently joined when there was no allegation in the complaint that the distributor disseminated the drugs that caused the plaintiffs' injuries. *See Aronis v. Merck & Co.*, No. Civ. S-05-0486 WBS DAD, 2005 WL 5518485, at *1 (E.D. Cal. May 3, 2005)

---

[10]     *See, e.g.*, *Demahy*, 2012 WL 5261492, at *6 (confirming that "with few exceptions, courts have held that state-law tort claims against generic drug manufacturers, including design defect claims, are preempted after *Mensing*") (citations omitted); *In re Pamidronate Prods. Liab. Litig.*, 842 F. Supp. 2d 479, 484-85 (E.D.N.Y. 2012) (design defect, negligence and warranty claims against generic manufacturer were preempted); *Moore v. Mylan, Inc.*, No. 1:11–CV–03037–MHS, 2012 WL 123986, at *6-7 (N.D. Ga. Jan. 5, 2012) (design defect claim against generic manufacturer was preempted); *In re Reglan Litig.*, No. 289, slip op. at 8-9, 13 (N.J. Super. Ct. Law Div. May 4, 2012) (defective design, negligence, negligence per se, fraud, misrepresentation and suppression, constructive fraud, breach of warranties, consumer fraud, and unjust enrichment claims against generic manufacturer were all essentially failure-to-warn claims and therefore preempted); *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, MDL No. 2243, No. Civ. 08-008 (GEB-LHG), 2011 WL 5903623, at *6, 8, 9 (D.N.J. Nov. 21, 2011) (design defect, negligence, breach of warranty, fraud, misrepresentation, failure to conform to representation, negligent misrepresentation, and consumer fraud claims against generic manufacturers were all preempted).

- 11 -

("The complaint does not state a cause of action against McKesson, and that failure is obvious . . . . Plaintiff makes no allegation that McKesson ever handled the specific pills that were allegedly the cause of her injuries."); *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, MDL No. 2385, 2013 WL 656822, at *5 (S.D. Ill. Feb. 22, 2013) (finding fraudulent joinder of McKesson because "generic allegations as to all of the defendants [did] not establish that McKesson . . . was, in any way, responsible for the product that allegedly caused the plaintiffs' injuries."); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Relevant Prods. Liab. Litig.*, No. 3:09-md-02100-DRH-PMF, 2010 WL 3937414, at *7, 9 (S.D. Ill. Oct. 4, 2010) (because plaintiffs only alleged that McKesson "may have distributed the subject drugs," they failed to "bring sufficient allegations as to McKesson under any traditional tort theory . . . [and] the Court ha[d] no choice but to conclude that there [wa]s no reasonable possibility that a state court would find that the Complaints . . . state a cause of action against McKesson").

27. For example, in *Aronis*, the plaintiff filed a product liability complaint against drug manufacturer Merck and pharmaceutical distributor McKesson arising from her use of the prescription drug Vioxx. *Aronis*, 2005 WL 5518485, at *1. As to the in-state defendant McKesson, the plaintiff alleged only that "Vioxx is manufactured and distributed by the defendants." *Id.* She failed to make any allegations that McKesson distributed the drugs that she specifically ingested and that caused her injuries, but instead argued that remand was appropriate because McKesson was a major distributor of Vioxx. *Id.* The court disagreed and found McKesson to be fraudulently joined. *Id.* ("The allegation that McKesson is a major distributor of Vioxx, even though taken as true at this stage, is not enough to support a claim against McKesson. To state a claim against a defendant, a plaintiff must allege a causal connection between the injury and the conduct of that defendant.") (citations omitted).

28. Likewise here, Plaintiffs fail to connect McKesson to their injuries. The only allegation in the Complaint concerning McKesson's role merely states: "This action involve [sic] claims . . . arising from the use of Plavix, a pharmaceutical compound researched, designed, formulated, compounded, tested, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed or otherwise

placed in the stream of interstate commerce by Defendant Bristol-Meyers Squibb Company

("BMS") [sic] and marketed, sold, and distributed by Defendant McKesson Corporation

("McKesson") . . . ." Ex. A, ¶ 1.[11]  Notably, the Complaint does not even state that McKesson

distributed the Plavix® Plaintiffs specifically ingested, and the general allegation that McKesson is

a distributor of Plavix® is insufficient.  *Aronis*, 2005 WL 5518485, at *1.  Plavix® is distributed

nationwide and in California by multiple distributors, in addition to McKesson, so it cannot be taken

for granted that any Plaintiff actually took pills distributed by McKesson.  Decl. of Todd May, ¶ 3

(Ex. E).

29.     Plaintiffs also cannot rely on their common allegations against "all Defendants."  *See*

Cal. R. Ct. 2.112 (each cause of action must specifically state "[t]he party or parties to whom it is

directed (e.g., 'against defendant Smith')"); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,

MDL No. 1047, No. C02-423R, 2002 WL 34418423, at *2-3 (W.D. Wash. Nov. 27, 2002) (in

product liability action involving over-the-counter medication, court found fraudulent joinder

because generalized allegations directed toward "defendants" or "all defendants" were insufficient

to state a claim against defendant retailer).  Plaintiffs' failure to make sufficient material and

particular allegations against McKesson is indicative of fraudulent joinder.  *See, e.g.*, *Brown v.

Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1137 (S.D. Cal. 1998) (in-state defendants fraudulently

joined where "no material allegations against [the in-state defendants] were made"); *Lyons v. Am.

Tobacco Co.*, No. Civ. A. 96-0881-BH-S, 1997 WL 809677, at *5 (S.D. Ala. Sept. 30, 1997) (there

is "no better admission of fraudulent joinder of [the resident defendants]" than the failure of the

plaintiff to "set forth any specific factual allegations" against them).

### iii.     Amount-in-Controversy

30.     The amount-in-controversy for diversity removal is satisfied.  Although the

Complaint seeks unspecified compensatory damages,[12] it is facially apparent from the Complaint

---

[11]     McKesson is specifically named in only two additional paragraphs in the Complaint.  Ex. A, ¶¶ 10, 43.  These paragraphs identify McKesson's citizenship and allege that venue is proper on account of that citizenship.  *Id.* ¶¶ 10, 43.

[12]     California Civil Procedure Code §§ 422.30, 425.10(b) prohibits plaintiffs in personal injury or wrongful death actions from stating the amount of damages demanded, but requires plaintiffs to

(Footnote Cont'd on Following Page)

that the amount-in-controversy between each Plaintiff and Defendant exceeds the sum or value of $75,000, exclusive of interest and costs.  The Complaint includes thirteen causes of action, and alleges that Plaintiffs' use of Plavix® caused "severe physical, economic and emotional" injuries, including death.  *See, e.g.*, Ex. A, ¶¶ 1, 11, 37.  Plaintiffs seek recovery for compensatory damages, future medical and incidental expenses, past and future lost wages, future medical monitoring, punitive damages, past and future emotional distress, disgorgement of profits, loss of consortium, and costs.  Ex. A, at 35-36 (Prayer for Relief).

31.     The allegations in the Complaint are substantially similar to other complaints filed in or removed to federal court and seeking more than $75,000 in damages.  *See* Compl. ¶ 215, *Chesney v. Bristol-Myers Squibb Co.*, No. 1:11-cv-3246 (KAM-VVP) (E.D.N.Y. July 5, 2011) (Ex. F) (seeking at least $3 million in damages); First Am. Compl. ¶ 6, *LaBarre v. Bristol-Myers Squibb Co.*, No. 3:06-cv-06050 (FLW-TJB) (D.N.J. May 1, 2009) (Ex. G) (alleging federal jurisdiction "because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs"); First Am. Compl., *Mills v. Bristol-Myers Squibb Co.*, No. 2:11-cv-00968 (removed D. Ariz. May 16, 2011) (Ex. H).

32.     On these facts, Defendant BMS reasonably asserts that the amount-in-controversy for each Plaintiff's claim in these actions exceeds $75,000, exclusive of interest and costs.  *See*, *e.g.*, *Kammerdiener v. Ford Motor Co.*, No. ED CV 09-2180 PSG (VBKx), 2010 WL 682297, at *2 (C.D. Cal. Feb. 24, 2010) (complaint seeking damages for wrongful death and personal injuries met amount-in-controversy); *Moore v. Goodyear Tire & Rubber Co.*, No. CV-11-01174-PHX-NVW, 2011 WL 3684508, at *3 (D. Ariz. Aug. 23, 2011) (amount-in-controversy met given that the case "involves the alleged wrongful deaths of three persons and serious injury to several others.  Such cases, if successful, are generally known to produce verdicts far in excess of $75,000").

## III.   PLAINTIFFS' CITIZENSHIP

33.     Plaintiff Gary Baez is a citizen of the State of Pennsylvania.  Ex. A. ¶11.

---

(Footnote Cont'd From Previous Page)
state only whether the case is a "limited civil case" under $25,000.  Plaintiffs here designated the case as "unlimited (amount demanded exceeds $25,000)" in the civil case cover sheet.

- 14 -

34.     Plaintiff Loretta Brody is a citizen of the state of Arizona.  *Id.* ¶ 12.  Plaintiff Gerald Brody is the spouse of Loretta Brody, and his citizenship is not stated in the Complaint.  *Id.* ¶ 13.

35.     Plaintiff Larry Butts is a citizen of the State of Alabama.  *Id.* ¶ 14

36.     Plaintiff George Carpenter is a citizen of the State of Georgia.  *Id.* ¶ 15.

37.     Plaintiff Gregory Gilhooley is a citizen of the State of Ohio.  *Id.* ¶ 16.

38.     Plaintiff Donna Gordon is a citizen of the State of California.  *Id.* ¶ 17.

39.     Plaintiff Leon Holbrook is a citizen of the State of Illinois.  *Id.* ¶ 18.  Plaintiff Ava Holbrook is the spouse of Leon Holbrook, and her citizenship is not stated in the Complaint.  *Id.* ¶ 19.

40.     Plaintiff Charles Houser is a citizen of the State of Pennsylvania.  *Id.* ¶ 20. Plaintiff Joan Houser is the spouse of Charles Houser, and her citizenship is not stated in the Complaint.  *Id.* ¶ 21.

41.     Plaintiff Balinda Johnson is a citizen of the State of Illinois.  *Id.* ¶ 22.

42.     Plaintiff Jack Miller is a citizen of the State of Indiana.  *Id.* ¶ 23.

43.     Plaintiff George Mosby is a citizen of the State of Virginia.  *Id.* ¶ 24.  Plaintiff Tamara Mosby is the spouse of George Mosby, and her citizenship is not stated in the Complaint.  *Id.* ¶ 25.

44.     Plaintiff Sophie Robison is a citizen of the State of Indiana.  *Id.* ¶ 26.

45.     Plaintiff Charlotte Ann Sawyer is a citizen of the State of Virginia.  *Id.* ¶ 27.

46.     Plaintiff Andre Steward is a citizen of the State of New Jersey.  *Id.* ¶ 28.

47.     Plaintiff Eric Stigler is a citizen of the State of Mississippi.  *Id.* ¶ 29.  Plaintiff Mae Lean A. Stigler is the spouse of Eric Stigler, and her citizenship is not stated in the Complaint.  *Id.* ¶ 30.

48.     Plaintiff David Sycks is a citizen of the State of Ohio.  *Id.* ¶ 31.  Plaintiff Cathy Conner is the spouse of David Sycks, and her citizenship is not stated in the Complaint.  *Id.* ¶ 32.

49.     Plaintiff Marie Tennison is a citizen of the State of Texas.  *Id.* ¶ 33.

50.     Plaintiff Constance Thornton is a citizen of the State of North Carolina.  *Id.* ¶ 34.

51.     Plaintiff Robert Williams is a citizen of the State of California. *Id.* ¶ 35.  Plaintiff Pamela Williams is the spouse of Robert Williams, and her citizenship is not stated in the Complaint. *Id.* ¶ 36.

52.     Plaintiff  Laurie Jakubowski, as representative on behalf of the Estate of Joseph Jakubowski, is a citizen of the State of Idaho. *Id.* ¶ 37-38.

**IV.     <u>PROCEDURAL REQUIREMENTS OF REMOVAL ARE SATISFIED</u>**

53.     This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).  Defendant BMS has received a copy of, but has not yet been served with, the Complaint.  Moreover, the Complaint was filed on February 27, 2014, which is less than 30 days prior to the date of this Notice.

54.     The Northern District of California is the federal judicial district encompassing the Superior Court of the State of California, County of San Francisco, where this suit was originally filed.  Venue is therefore proper in this district under 28 U.S.C. § 1441(a).

55.     Jurisdiction pursuant to 28 U.S.C. § 1332 requires consent of all Defendants. Defendant McKesson has not been served and therefore its consent to this removal is not required. *See Destfino v. Reiswig*, 630 F.3d 952, 957 (9th Cir. 2011) (finding an exception to the consent rules where a defendant has not been properly served at the time of removal).  Moreover, Defendant McKesson is fraudulently joined and therefore is not required to join in the removal. *United Computer Sys. Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002).  The unidentified defendants Does 1-100 are not required to consent to removal. *See Hafiz v. Greenpoint Mortg. Funding*, 409 F. App'x 70, 72 (9th Cir. 2010) (nominal parties are not required to consent to removal).

56.     Defendant BMS is providing Plaintiffs with written notice of the filing of this Notice of Removal as required by 28 U.S.C. § 1446(d).

57.     Pursuant to 28 U.S.C. § 1446(d), Defendant BMS is filing a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California, County of San Francisco.

58.     Defendant BMS hereby demands a trial by jury on all issues and all counts of the Complaint.

1

2          WHEREFORE, Defendant BMS hereby gives notice that the above-entitled state court

3  action, formerly pending in the Superior Court of the State of California, County of San Francisco

4  be removed to the United States District Court for the Northern District of California.

5

6

7                                        By:  /s/ *Jeremy M. McLaughlin*
                                               Maurice A. Leiter
8                                              Michael J. Baker
                                               Sharon D. Mayo
9                                              Jeremy M. McLaughlin

10                                       *Attorneys for Defendant Bristol-Myers Squibb*
                                         *Company*
11

12

13  Dated:  February 28, 2014

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### CERTIFICATE OF SERVICE

2          I hereby certify that on February 28, 2014, a true and correct copy of the foregoing has been

3  sent to all counsel and parties listed below via U.S. Mail.

4
          William M. Audet
5          Joshua C. Ezrin
          AUDET & PARTNERS, LLP
6          221 Main Street, Suite 1460
          San Francisco, CA 94105
7
8          Daniel C. Burke
          Michael S. Werner
9          PARKER WAICHMAN LLP
          6 Harbor Park Drive
10         Port Washington, NY 11050

11         *Attorneys for Plaintiffs*

12
          McKesson Corporation
13         The Prentice Hall Corporation Systems, Inc.
          2730 Gateway Oaks Dr., Suite 100
14         Sacramento, CA 95833

15         *Defendant*

16
17                                          _____/s/*Jeremy M. McLaughlin*_____
                                            Jeremy M. McLaughlin
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF REMOVAL